FRANK DITTO
P.O. 234
New York, N.Y. 10276
(415) 990-1284
dz9studios@gmail.com

IN THE UNITED STATES DISTRICT COURT,

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK DITTO ) <br> (PLAINTIFF) ) <br> ) <br> VS. ) <br> ) <br> ) <br> CATHERINE DITTO ) <br> DOES 1-10 ) <br> ) <br> ) <br> _____ ) | CASE NO#  # <br><br> **COMPLAINT FOR:** <br> **TORTIOUS** <br> **INTERFERENCE, UNJUST** <br> **INRICHMENT,** <br> **VIOLATIONS RUFADAA,** <br> **ECPA, SCA, CFAA, 4th** <br> **AMENDMENT MENTAL &** <br> **EMOTIONAL DISTRESS** |

_

### JURISDICTION

1. This court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and an amount in controversy greater than $75,000. Plaintiff resides in the state of New York and Defendant resides in the state of Illinois. Damages are greater than $75,000.00.

### VENUE

2. Venue is proper pursuant to 28 U.S.C § 1391 because Plaintiff resided in the state of New York and the events giving rise to this complaint happened in this district.

### PARTIES

3. Plaintiff Frank Ditto, P.O. Box 234, New York, NY 10276

4. Defendant Catherine Ditto, residing at **Ferdinand** Avenue, Forest Park, IL 60130-1766

### STATEMENT OF FACTS

5. This case is being brought before this Court because Catherine Ditto ( Defendant) illegally accessed the contents of Mary Ditto's (Decedent) personal email account and interfered with a contractual agreement between Frank Ditto (Plaintiff) and Decedent. Defendant invaded Decedent's and Plaintiff's privacy, using these illegally obtained emails as the sole basis of her challenge,

2

6. In October of 2012, Decedent used a quit claim deed to gift her house (Premises) to Plaintiff. (See Exhibit A)   After Decedent passed away, Defendant became Executor of the Estate.   After three years in Probate Court, she began proceedings to gain possession of the Premises by accessing the contents of Decedent's personal communications with Plaintiff from Decedent's email account to use as the basis of  her case.  In doing so, she violated the terms of the service provider's agreement with Decedent, the Revised Uniform Fiduciary Access to Digital Assets Act (RUFADAA) and The Federal Electronics Communications Privacy Act (ECPA). Defendant submitted numerous personal emails as evidence, including personal communications and conversations Decedent and Plaintiff had with attorneys, family members and each other. (See Exhibit B)  She also included an alleged plane ticket receipt confirmation from one of Decedent's airline tickets in 2012 when Decedent visited Plaintiff in California.  (See Exhibit C)

7. Due to their immediate nature, users treat electronic communications more like voice communications and thus should receive a greater degree of privacy protection.  Plaintiff and Decedent had ongoing communications that were a combination of emails and phone calls. Presenting the emails without the corresponding up conversations Intentionally paints an incomplete and false picture of what actually occurred.  Defendant is using these incomplete communications to prejudice the Court against Plaintiff.

8.  Stored communications, like emails and messages, stored *by default*, require several steps to delete, and involve a third-party custodian that has responsibility by federal law to protect the privacy of the communications.  *Because it is easy to manipulate digital assets, service providers require those other than the creator of an account to follow steps to insure protection*. SBC, Decedent's provider, is a subsidiary of AT&T. Their service agreement

3

states that to gain access to digital assets, custodians must submit a written request to the provider. They must also provide a certified copy of the user's death certificate, a certified copy of the appointment or court order, and a copy of the will, trust, or power of attorney granting the representative access, in compliance with The Digital Access Act. Defendant and her attorneys took it upon themselves to forgo these steps, illegally accessing Decedent's private email contents between Defendant and Plaintiff. The Act makes a distinction between "content" and "catalog." Catalog is what many people would call metadata. The To/From and subject headers in an email would be "catalog." The actual body of the email is "content."This distinction is necessary to ensure that the Act does not run afoul of ECPA which protects information in the body of an electronic message that is not readily available to the public. Defendant's current attorney, Theodore Harmon, went so far as to submit email content as evidence, but redacted "attorney client information" in compliance with attorney client privilege, while completely abandoning state and federal privacy laws. (See Exhibit C) disregarding both Decedent and Plaintiff's right to privacy.

9. The Stored Communications Act (SCA) and the Computer Fraud and Abuse Act (CFAA) are both federal laws that govern access to digital accounts and assets. These laws mainly function by legally supporting the user and terms-of-service agreements signed by the person who created the account. Nearly all of these prohibit the use of an account or service by anyone other than the creator. It's not enough to have the login and password, the individual who accesses the account after a death must have the legal authority to do so. This should be done through the service provider and written into the estate plan. *Taking these steps ensure that an email presented as evidence is genuine because it comes from the provider and not from someone who could alter the*

4

*communication to serve their own purposes*. **Defendant didn't comply with these requirements.** Defendant simply hacked Decedent's email account. There were *no instructions in the will or written directives, no court order or death certificate presented* granting Defendant access to Decedent's personal SBC.global email account, and although there are numerous illegally obtained emails submitted as exhibits in Defendant's pleadings, there is no documentation in the exhibits that demonstrate Defendant took these steps to gain access to Decedent's personal email account. An email illegally obtained and not authenticated by a third party is hearsay and inadmissible as evidence in Court. (**720 ILCS 5/16D-3(2)**) )(755 ILCS 7/70)

10. Defendant used these illegally obtained emails as a basis to interfere with and disrupt Plaintiff's contractual agreement with Decedent. This resulted in the necessity of Plaintiff to seek another residence, costing him time, money, and additional stress, slowing his recovery from chemotherapy treatment for Hodgkin's Lymphoma. As Plaintiff is indigent, he has to represent himself Pro Per, Pro Se, causing him a loss of income to take time to dispute Defendant's claims.

### CLAIM 1

11. ( Tortious Interference; Illegally obtained emails to interfere and disrupt Plaintiffs contractual agreement by violating RUFADAA, ECPA, SCA and CFAA.)

(5 U.S.C. § 552a, Fourth Amendment/ 42 U.S.C. § 1983.)(Allen v. Leybourne, 190 So. 2d 825 - Fla: Dist. Court of Appeals, 3rd Dist. 1966)

12  Plaintiff realleges paragraphs 1 through 10.

13.  By doing the acts described in paragraphs 6 through 9, Defendant caused and committed the violation of Plaintiff's Fourth Amendment right to protection of privacy, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983

### CLAIM 2

14.  (Unjust Enrichment; The defendant gained an advantage.

at Plaintiff's expense by illegally accessing the content of Decedent's email account, violating RUFADAA, ECPA, SCA and CFAA.)

(Kaye v. Grossman 202 F.3d 611, 616 (2d Cir. 2000)(5 U.S.C. § 552a, Fourth Amendment/ 42 U.S.C. § 1983.)

15.  Plaintiff realleges paragraphs 1 through 12.

16. By doing the acts described in paragraphs 6 through 9, Defendant caused and committed the violation of Plaintiff's Fourth Amendment right to protection of privacy, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983

### REQUEST FOR RELIEF

WHEREFORE, the plaintiff requests:

17. Compensatory damages, including general and special damages, according to

proof;

18. Any further relief which the court may deem appropriate.

17. Mental Distress in the amount of $250,000.00 totaling 3,400,000.00

18. Reimbursement for moving expenses and rent in the amount of $142,200.00

## Verification

I declare under the penalty of perjury that the foregoing is true and correct and to those matters that are stated on information and belief I believe to be true.

Dated: June 1, 2023

*Frank Ditto* (signature)

Frank Ditto