USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/31/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK DITTO,

Plaintiff,

-against-

CATHERINE DITTO,

Defendant.

23-CV-5814 (JHR) (BCM)

**REPORT AND RECOMMENDATION TO THE HONORABLE JENNIFER H. REARDEN**

**BARBARA MOSES, United States Magistrate Judge.**

Frank Ditto (Frank), proceeding *pro se*, brings this action against his sister Catherine Ditto (Catherine), who is the Executor of the estate (Estate) of their late mother Mary Ditto (Mary). Frank alleges that in May 2022, after Mary's death, Catherine unlawfully accessed Mary's personal email account and used the resulting emails to "interfere" with a 2012 agreement between plaintiff and his mother. Amend. Compl. (Dkt. 19) ¶¶ 5, 6. Although Frank's current pleading does not disclose where or how Catherine used the emails, his prior filings make it clear that Catherine submitted the emails as evidence in Illinois probate court to rebut plaintiff's claim, in that forum, that Mary had gifted her Illinois home to Frank ten years earlier, and thus that it should not be part of the Estate. *See* Compl. (Dkt. 1) ¶ 6.

Now before me for report and recommendation (*see* Dkt. 24), is Catherine's motion to dismiss Frank's claims "due to lack of jurisdiction." (Dkt. 17.) For the reasons that follow, I recommend that this action be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), because Frank has pleaded no facts that would permit this Court to exercise personal jurisdiction over Catherine. In the alternative, I recommend that the case be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), because venue does not lie in the Southern District of New York.

## I.     BACKGROUND

Frank maintains a P.O. box in New York, New York, Compl. ¶ 3; Amend. Compl. ¶ 3, and "resided in the State of New York" when the "events giving rise to this complaint happened[.]" Amend. Compl. ¶ 2. Catherine resides in Forest Park, Illinois. Compl. ¶ 4; Amend. Compl. ¶ 4. Catherine serves as the independent Executor of the Estate, which is in probate proceedings before the Circuit Court of Cook County, Illinois – Probate Division (the Probate Court). Compl. ¶ 6; *see also* Pl. Reply (Dkt. 23) Ex. A (Probate Court filing by Catherine, as Executor of the Estate).

### A.     Prior Litigation

This not Frank's first lawsuit against Catherine. On May 27, 2017, Frank sued both his sister and his mother in the Northern District of California (where he was living at the time), alleging that Catherine used "undue influence to abscond from a contractual agreement made by Mary Ditto and Frank Ditto concerning will and testement [sic] of an agreement of the house of real property." Compl. (Dkt. 1) at ECF p. 5, *Ditto v. Ditto*, No. 17-CV-3063 (N.D. Cal. May 26, 2017). Frank alleged that Catherine was influencing Mary to sell her house, "in an effort to destroy plaintiff's interest in last will and testement [sic] and real property." *Id*. He asked the court to "order the sale to stop" and order Catherine to "cease her interference with the will." *Id*. at ECF p. 7. That case was voluntarily dismissed on August 3, 2017.

After Mary's death, on December 30, 2021, Frank sued his sister and the Estate in this Court, alleging that Mary gifted him her home in Rockford, Illinois (the Property or the Premises) in 2012, thus "taking it out of the will," but that Catherine was improperly trying to "recover the house in probate court" by "including" it "as part of the estate." *See* Compl. (Dkt. 2-1) at ECF pp. 3-7, *Ditto v. Estate of Ditto*, No. 21-CV-11235 (S.D.N.Y. Dec. 30, 2021). Plaintiff asked this Court to "insure" that the house "is surrendered back to plaintiff," and for damages. *Id*. at ECF p. 19.

2

One week later, the Hon. Laura Taylor Swain, Chief District Judge, transferred the case to the Northern District of Illinois, because venue was improper in this district. *See* Transfer Order (Dkt. 3), *Ditto v. Estate of Ditto*, No. 21-CV-11235 (S.D.N.Y. Jan. 5, 2022). Chief Judge Swain explained that plaintiff failed to satisfy the general venue statute, 28 U.S.C. § 1391(b), in that he failed to allege that any defendant resided in this district or that a substantial part of the events giving rise to his claims arose in this district. *Id*. at 1-2.

On June 2, 2023, the Hon. Andrea R. Wood, United States District Judge, sitting in the Northern District of Illinois, dismissed the case for lack of subject-matter jurisdiction, relying on the probate exception, because plaintiff (despite having amended his pleading several times) was "still seeking to use this lawsuit as a means of adjudicating his claim of ownership to the Property," which claim was, at the same time, being litigated before the Probate Court. *Order* (Dkt. 83) at 2, *Ditto v. Estate of Ditto*, No. 22-CV-193 (N.D. Ill. June 2, 2023). Judge Wood explained to plaintiff that he "must litigate any of his claims to the Property before the probate court, not this Court or any other federal court." *Id*. at 3.

**B.     This Action**

Less than one month later, on July 1, 2023, Frank filed this action, for which he has been granted leave to proceed *in forma pauperis*. (Dkt. 4.) In his initial Complaint he alleged – again – that Mary gifted her house to him in 2012, but that after Mary's death, Catherine, acting as Executor of the Estate, "began proceedings to gain possession of the Premises[.]" Compl. ¶ 6. In connection with those proceedings, plaintiff alleged, Catherine illegally "access[ed] the contents of Decedent's personal communications with Plaintiff from Decedent's email account to use as the basis of her case," and "submitted numerous personal emails as evidence." *Id*. Catherine used those emails to "prejudice" the Probate Court against him and "interfere with and disrupt" his "contractual agreement" with his late mother. *Id*. ¶¶ 5-10. On this basis, Frank asserted claims against Catherine

3

for tortious interference with contract, unjust enrichment, and violation of his Fourth Amendment rights. *Id*. ¶¶ 11-16.

By order dated November 1, 2023, I noted that the Complaint disclosed "no apparent basis for venue in this Court," and directed plaintiff to file an amended complaint, no later than December 1, 2023, to identify "which of the events alleged in his pleading took place in the Southern District of New York." 11/1/2023 Order (Dkt. 14) at 4.

On November 9, 2023 – without waiting for plaintiff to amend – Catherine filed her motion to dismiss. In her accompanying memorandum, Catherine argues that this Court lacks subject-matter jurisdiction, under the probate exception, because plaintiff improperly seeks to obtain rulings from this Court as to what evidence defendant may use in the Probate Court. Def. Mem. (Dkt. 16) at 2, 4. She further contends that this Court cannot exercise personal jurisdiction over her because she is a resident of Illinois and all of her complained-of actions, including her conduct of the probate proceedings, took place in Illinois. *Id*. at 1-4. She adds that venue is improper because none of the events alleged in the Complaint took place in this district. *Id*. at 4.

Frank filed his Amended Complaint on December 1, 2023, explaining that he "omitted" the "Illinois state matters" from his new pleading (including "[t]he house [in Rockford, Illinois], the estate of Mary Ditto, and other matters from the previous filing") so as to "maintain the focus on the federal offense" and assure himself of a federal forum. Amend. Compl. at ECF p. 3.[1] Plaintiff further asserts that he is entitled to sue Catherine in this district because her conduct "affects Plaintiff in his New York residency," and because she traveled to New York in 2013 or 2014, to "discredit" plaintiff by "showing a letter she received regarding her interference with

---

[1] Paragraph 1 of the Amended Complaint spans six pages of text. Consequently, I cite to this portion of the pleading by ECF page number.

Plaintiff's financial assistance from Decedent." *Id*. at 4; *see also* Pl. Reply Ex. B.[2] This trip, plaintiff alleges, was a "federal offense," because Catherine "cross[ed] state lines with a hard copy letter to show persons in [an] effort to discredit, humiliate, and compromise plaintiff." *Id*. at ECF p. 3. Moreover, according to plaintiff, Catherine later "continu[ed] this invasion of privacy by illegally obtaining emails to a hacked account and making them public." *Id*.

True to his word, plaintiff has stripped his pleading of virtually all detail regarding the 2022 "invasion of privacy." He now alleges only that, in May of that year, Catherine "illegally accessed the contents of Mary Ditto's (Decedent) personal email account and interfered with a contractual agreement between Frank Ditto (Plaintiff) and Decedent," Amend. Compl. ¶ 5, specifically, "a previous 2012 Agreement between Plaintiff and Decedent regarding a deed and house repairs." *Id*. ¶ 6. This conduct, plaintiff alleges, violated the "Digital Information Act." *Id*. ¶ 5.[3] On this basis, Frank once again asserts claims for tortious interference with contract, unjust enrichment, and violation of his Fourth Amendment rights, entitling him to "recover damages pursuant to 42 U.S.C. § 1983." *Id*. ¶¶ 11, 13, 14, 16.

On February 18, 2024, Catherine filed an updated memorandum in support of her motion to dismiss, arguing that "[d]espite Frank's attempts to obfuscate, the Amended Complaint is still about the evidence being presented in the probate proceedings in Illinois." Def. 2d Mem. (Dkt. 22) at 1. Therefore, she contends, the probate exception applies, depriving this Court of subject-matter

---

[2] Exhibit B is a copy of "the letter" that Catherine allegedly brought with her to New York in 2013 or 2014. It is addressed to Catherine and, although unsigned, appears to be from Frank. The letter accuses Catherine of being insufficiently affectionate to Frank's daughter; recommends psychiatric treatment for Catherine; recounts various financial and medical misfortunes suffered by Frank; and accuses Catherine of hardening Mary's heart against Frank in his time of need. There is no reference in the letter to Mary's alleged 2012 gift of her house, Mary's will, or Mary's email account.

[3] Plaintiff does not provide a citation for the Digital Information Act. There is no federal statute by that name.

jurisdiction. *Id*. at 2. As to personal jurisdiction and venue, Catherine notes that her alleged visit to New York was unrelated to Frank's present claims, which accuse her of improperly accessing Mary's emails in 2022 and then submitting those emails to the Probate Court. *Id*. Catherine requests that Frank be sanctioned pursuant to Fed. R. Civ. P. 11 and "barred from filing further lawsuits in this Court concerning my actions as the Executor of the Estate of Mary Ditto." *Id*. at 3.

In his reply memorandum, filed on December 31, 2024, Frank argues that he is entitled to a federal forum because this case "primarily involves a federal offense under the Digital Information Act and an invasion of privacy, which fall outside the scope of the probate exception." Pl. Reply at ECF p. 3. In his view, he has adequately demonstrated federal subject-matter jurisdiction by "appropriately separating the federal offense from other prior cases." *Id*. at ECF p. 4. Turning to personal jurisdiction and venue, plaintiff notes that he has now alleged that Catherine personally visited New York in 2013 or 2014, and cites *State v. Vayu, Inc.*, 39 N.Y.3d 330, 206 N.E.3d 1236 (2023), as support for his contention that New York's long-arm statute "supports the filing in New York where Plaintiff resides." *Id*. at ECF pp. 4-5. .

## II.    DISCUSSION

The Court construes defendant's motion as seeking the dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject-matter jurisdiction; Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction; and Fed. R. Civ. P. 12(b)(3), for improper venue. Each of these is a "threshold" challenge which, if decided adversely to plaintiff, precludes this Court from considering the merits of his claims.

Jurisdictional questions ordinarily come first in "dispositional order." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). However, "there is no mandatory 'sequencing of jurisdictional issues.'" *Id*. (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574,

6

584 (1999)). Thus, "a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction." *Id.*; *see also, e.g.*, *ACE Am. Ins. Co. v. Univ. of Ghana*, 2022 WL 3362193, at *2 (S.D.N.Y. Aug. 15, 2022) (disposing of case on the "familiar territory" of personal jurisdiction where defendant's challenge to subject-matter presented a "thorny, substantive dispute"). The same is true for other non-merits threshold issues, such as whether the plaintiff is entitled to litigate in the forum he has chosen. *See Sinochem*, 549 U.S. at 432 (a district court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant").

In this case, notwithstanding Frank's recent amendment, he has failed to allege any facts that would permit this Court to assert either general or specific personal jurisdiction over Catherine. Additionally, he has once again failed to satisfy the federal venue statute. Rather than parse the precise extent to which this action is barred by the probate exception, therefore, I turn first to the question of personal jurisdiction, and then address venue.

### A.    Personal Jurisdiction

#### 1.    Standards

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the moving defendant. *See BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). Where, as here, the case is in the pleading stage, the plaintiff "need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant," *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted), and the court must construe the pleadings (and any affidavits) "in the light most favorable to the plaintiff," resolving doubts in the plaintiff's favor. *Banker v. Esperanza*

*Health Sys., Ltd.*, 201 Fed. Appx. 13, 15 (2d Cir. 2006) (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)). The court need not, however, "draw argumentative inferences in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) and *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)). Thus, the plaintiff "may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini* 148 F.3d at 185).

A personal jurisdiction dispute requires a two-part analysis. The court must first determine whether there is a "statutory basis for exercising personal jurisdiction," *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013), and must then decide "whether the exercise of personal jurisdiction . . . comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014); *see also Vivi Holding E. Corp. v. Wong*, 2023 WL 318236, at *3 (S.D.N.Y. Jan. 19, 2023); *Art Assure,* 2014 WL 5757545, at *2. In the statutory portion of the analysis, the court "applies the forum state's personal jurisdiction rules," unless the plaintiff is suing under a federal statute that "specifically provide[s] for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997) (internal quotation marks omitted).

Frank has not identified any such federal statute. Instead, he relies on New York's long-arm statute, N.Y.C.P.L.R. (CPLR) § 302(a). *See* Amend. Compl. at ECF p. 4 (relying on the "Long Arm Statute"); Pl. Reply at ECF pp. 4-5 (relying on *Vayu*, which applies CPLR § 302(a)(1)). As relevant here, the long-arm statute permits a court to exercise specific personal jurisdiction over a

defendant who is not a domiciliary of New York, "[a]s to a cause of action arising from any of the acts enumerated in this section," if the defendant:

1.　　transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.　　commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.　　commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

　　(i)　　regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

　　(ii)　　expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

CPLR § 302(a)(1)-(3).

Although the long-arm statute permits a court to exercise jurisdiction over defendants who do not reside in the forum state, the grant of jurisdiction is "specific" to "a narrower class of claims," *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021), namely, claims that "arise from" the jurisdiction-conferring acts. Thus, for purposes of subsection (a)(1), there must be an "'articulable nexus' or 'substantial relationship' between the business transaction and the claim asserted." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339, 984 N.E.2d 893, 900 (2012) (internal citations omitted). An adequate nexus exists where "at least one element" of the plaintiff's cause of action "arises from the New York contacts." *Id.* at 341, 984 N.E.2d at 901. Conversely, "[a] connection that is 'merely coincidental' is insufficient to support jurisdiction." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

If there is a statutory basis for the exercise of specific personal jurisdiction, the court proceeds to the constitutional portion of the analysis, which turns on whether the plaintiff has

9

adequately alleged "(1) that [the] defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks*, 714 F.3d at 673 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Here too, if the defendant is a non-domiciliary, the court must assure itself that the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *In re Terrorist Attacks*, 714 F.3d at 673-74 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996)).

### 2. Application of Standards

Frank makes only two allegations connecting Catherine to New York: (i) that she "traveled to New York in approximately 2013-2014 to visit friends and family of Plaintiff in an effort to discredit him by showing a letter she received regarding her interference with Plaintiff's financial assistance from Decedent," Amend. Compl. at ECF p. 4; *id*. ¶ 5; and (ii) that her alleged 2022 misconduct – committed entirely in Illinois – "affects Plaintiff in his New York residency." *Id*. at ECF p. 4. Neither is sufficient to establish jurisdiction under CPLR § 302(a).

Plaintiff's allegations concerning Catherine's trip to New York in 2013 or 2014 (which I accept as true for purposes of the pending motion) do not satisfy any of the relevant subsections of CPLR § 302(a). Catherine is not alleged to have transacted business or supplied goods or services within New York, as required by CPLR § 302(a)(1), when she visited in 2013 or 2014. Nor was her conduct tortious, as required by § 302(a)(2).[4]

Even if Catherine's conduct when in New York qualified as one of the "acts enumerated in [§ 302(a)]," her decade-old trip would not subject her to personal jurisdiction in this action, because none of plaintiff's claims arise from her conduct while in New York. Rather, he alleges that she

---

[4] It is not unlawful for a sister, upon receiving a letter from her brother, to show that letter to friends and family, even if her purpose in doing so is to "discredit him." Amend. Compl. at ECF p. 4. Nor it is unlawful to "cross state lines" for that purpose. *Id*. at ECF p. 3.

tortiously interfered with his contractual rights, unjustly enriched herself, and violated his Fourth Amendment rights by accessing her deceased mother's email account in October 2022 and using emails from that account as evidence in an Illinois state court proceeding. *See* Amend. Compl. ¶¶ 5, 11-14. Since there is no "articulable nexus" between this action and Catherine's decade-old trip to New York, this Court cannot adjudicate Frank's claims. *See, e.g.*, *Ballon Stoll P.C. v. Cutler*, 2024 WL 1256049, at *6-7 (S.D.N.Y. Mar. 25, 2024) (court could not exercise personal jurisdiction over non-resident defendants Avi and David Cutler, even though they came to New York in 2012 for a dinner meeting with plaintiff, because the lawsuit arose out of the Cutlers' allegedly tortious conduct in 2022, and there was no "articulable nexus" between plaintiff's legal claims and the dinner meeting ten years prior).[5]

Plaintiff's allegation that Catherine's more recent conduct in Illinois "affects" him in New York, Amend. Compl. at ECF p. 4, fares no better. First, it is entirely conclusory, lacking any "supporting facts," *Art Assure*, 2014 WL 5757545, at *2, as to the actual injury that plaintiff claims

---

[5] *State v. Vayu* is not to the contrary. The State University of New York (SUNY) sued Vayu for breach of contract, alleging that it sold SUNY two unmanned aerial vehicles (UAVs) that did not perform as promised. *Vayu*, 39 N.Y.3d at 332, 206 N.E.3d at 1238. Although Vayu was an out-of-state corporation, it negotiated the UAV contract – and later attempted to address the performance issues – through multiple calls and emails into New York over a two-year period. *Id.* at 333-344, 206 N.E.3d at 1239-40. Vayu's principal then visited New York for the express purpose of meeting his SUNY counterpart, face to face, to negotiate modified "terms for moving forward." *Id.* On these facts, the New York Court of Appeals held that Vayu demonstrated a "clear intent" to transact business in New York for purposes of CPLR § 302(a)(1). *Id.* Catherine, by contrast, conducted no business during her trip to New York in 2013 or 2014; she merely "visit[ed] friends and family." Amend. Compl. ¶ 5. Moreover, there was no "nexus" problem in *Vayu*. There, the court held that "[t]he second prong of New York's long-arm statute, requiring the cause of action to arise from a defendant's relevant business transaction in the state, is easily met" because plaintiff's claims were "based on the sale of the two UAVs, and Vayu's contacts in New York were directly related to efforts to resolve the dispute over operability of the purchased UAVs." *Vayu*, 39 N.Y.3d at 336, 206 N.E.3d at 1241. Here, by contrast, plaintiff's only alleged connection to New York is "merely coincidental," and hence "insufficient to support jurisdiction." *Sole Resort*, 450 F.3d at 103.

11

to have suffered.[6] Second, "Courts determining whether there is injury in New York sufficient to warrant jurisdiction under this provision generally apply a situs-of-injury test, where the 'situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff.'" *Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 61 (2d Cir. 2019) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)). Therefore "[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3)[.]" *Whitaker*, 261 F.3d at 209; s*ee also Troma Entm't, Inc. v. Centennial Pictures*, 729 F.3d 215, 218 (2d Cir. 2013) ("[T]he suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes."). Moreover, subsection (a)(3) requires a showing that the defendant (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [New York]," or (ii) "expects or should reasonably expect the act to have consequences in the state *and* derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(i)-(ii) (emphasis added). The Amended Complaint contains no facts suggesting that either of these prongs could be met.

Since Frank has failed to state any facts that would permit this Court to exercise personal jurisdiction over Catherine under CPLR § 308(a), there is no need to consider whether such an exercise would comport with due process. This action should be dismissed pursuant to Rule 12(b)(2).

---

[6] Frank alleges that Catherine is "in a position to make all emails public," which would "compromise his ability to make a living in the State of New York," Amend. Compl. ¶ 5, but does not allege that Catherine has actually made all of the emails public. Nor does he explain why the publication of emails between him and his mother would compromise his earning power.

### B.    Venue

In the alternative, this action should be dismissed for improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a). Under the general venue statute, a civil action may be brought in "a judicial district in which any defendant resides," or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). For venue purposes, a "natural person" resides in the district where the person is domiciled. *Id.* § 1391(c)(1).

Frank concedes that Catherine does not reside in this district, Amend. Compl. ¶ 4, and makes no effort to allege that the events giving rise to his current claims occurred here. Instead, he contends that venue is proper in this district "because a substantial part of the events or omissions giving rise to the claim affected Plaintiff who resides in this district." *Id.* at ECF p. 2; *see also id.* ¶ 2 ("Venue is proper pursuant to 28 U.S.C § 1391 because Plaintiff resided in the state of New York and the events giving rise to this complaint happened to Plaintiff while residing in this district."). Plaintiff misunderstands the test. Where he resided when the underlying events unfolded – or when they "affected" him – is irrelevant to venue.

Where, as here, a case is filed in the wrong district, the court in that district "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). Two years ago, when plaintiff first attempted to sue his sister in this district, Chief Judge Swain exercised her discretion to transfer that case to the Northern District of Illinois, which dismissed it for lack of subject-matter jurisdiction. Instead of learning from that experience, plaintiff has once again attempted to sue his sister in a district that cannot exercise personal jurisdiction over her, and where venue is improper. Under the circumstances, the interests of justice do not require another transfer to the Northern District of Illinois. If this case is not dismissed pursuant to Rule 12(b)(2), therefore, it should be dismissed pursuant to Rule 12(b)(3) and § 1406(a).

## III.   CONCLUSION

For the foregoing reasons, I recommend, respectfully, that defendant's motion be GRANTED and that this action be DISMISSED pursuant to Rule 12(b)(2) for lack of personal jurisdiction. In the alternative, I recommend that the case be DISMISSED pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue.[7]

The Clerk of Court is respectfully directed to mail copies of this Report (i) to plaintiff at his address of record and (ii) to defendant at:

> Catherine Ditto
> 446 Ferdinand Avenue
> Forest Park, Illinois 60130

Dated: New York, New York
        May 31, 2024

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[7] Catherine's updated memorandum may be construed as a cross-motion for sanctions pursuant to Fed. R. Civ. P. 11. *See* Def. 2d Mem. at 3. Even after dismissing for lack of personal jurisdiction or improper venue, this Court retains the jurisdiction to adjudicate a Rule 11 motion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("district courts may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1)"); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 665-67 (S.D.N.Y. 1997) (granting defendant's Rule 11 motion after dismissing case for lack of personal jurisdiction), *aff'd,* 173 F.3d 844 (2d Cir. 1999). However, Catherine did not comply with any of the requirements set forth in Rule 11(c)(2). Consequently, her sanctions motion should be denied.

14

## <u>NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS<br>TO THIS REPORT AND RECOMMENDATION</u>

The parties shall have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Jennifer H. Rearden, United States District Judge, at 500 Pearl St., New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rearden. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).